UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BENJAMIN HAYNES COLLINS,

                        Petitioner,                      Case No. 1:08-cv-369

v.                                            Honorable Robert Holmes Bell

MARY BERGHUIS,

                        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 30 months to 15 years, imposed by the Mason County Circuit Court on May 10, 2005, after a jury convicted Petitioner of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d. In his *pro se* petition, Petitioner raises three grounds for relief, as follows:

I.      THE CONVICTION SHOULD BE OVERTURNED BECAUSE [PETITIONER'S] FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO AN IMPARTIAL JURY WERE VIOLATED WHEN A JUROR WAS UNTRUTHFUL DURING VOIR DIRE AND WHEN [PETITIONER] WOULD HAVE EXCUSED THE JUROR.

II.     THE CONVICTION SHOULD BE OVERTURNED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED AN UNQUALIFIED WITNESS TO TESTIFY AS AN EXPERT AND [] THE ATTORNEY WAIVER CONSTITUTED INEFFECTIVE [ASSISTANCE OF COUNSEL].

III.    THE CONVICTION [SH]OULD BE OVERTURNED BECAUSE [PETITIONER'S] STATE AND FEDERAL CONSTITUTIONAL RIGHTS GUARANTEEING THE RIGHT TO EFFECTIVE ASSISTANCE OF

COUNSEL WERE VIOLATED WHEN HE WAS PREJUDICED BY HIS
ATTORNEY'S INEFFECTIVE [ASSISTANCE OF COUNSEL].

(Pet., Page ID #6, docket #1.)  Respondent filed an answer to the petition (docket #6) stating that the

grounds should be denied because they are noncognizable, procedurally defaulted or without merit.

Upon review and applying the AEDPA standards, I find that all of the grounds for habeas corpus

relief have no merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A.    Trial Court Proceedings

The state prosecution arose from the rape of Heather Gale by Petitioner, a co-worker,

at Petitioner's apartment in Ludington during a lunch break on July 14, 2003.  Petitioner was charged

with third-degree criminal sexual conduct and was tried before a jury beginning April 6, 2005, and

concluding on April 7, 2005.

Heather Gale testified that she worked for Memorial Medical Center (MMC) as a

dietician in the summer of 2003.  Petitioner, a cook, also worked at MMC.  (Apr. 6, 2005 Trial

Transcript Vol. I (TT I ), 148-50, docket #11.)  During work on July 14, 2003, Petitioner asked Gale

to drive him to his apartment because he did not have a car. (TT I, 152-53.)  Petitioner wanted to

check his answering machine for messages.  He mentioned that Gale could also see his daughter, as

his wife and daughter would be home.  (TT I, 153.)  When Gale and Petitioner arrived at the

apartment, no one else was in the apartment.  Petitioner asked Gale to come into his bedroom so he

could show her a picture.  At that point, Gale felt uncomfortable but she still went into the bedroom.

(TT I, 154.)  After a few moments, Gale started to retreat out of the bedroom, but Petitioner grabbed

her wrists and pulled her onto his bed.  (TT I, 154-55.)  Petitioner held Gale's hands down with one

hand and used the other hand to unzip his pants and pull her scrub pants down.  Gale told Petitioner "No. Stop."  (TT I, 155.)  Petitioner said "I have not had anyone like you in a long time.  You're gonna like this."  (TT I, 155.)  Petitioner then penetrated Gale's vagina with his penis.  (TT I, 155.)  Gale just lay there until Petitioner pulled out of her.  Petitioner said "I'm coming."  (TT I, 156.)  Gale saw Petitioner ejaculate.  She also noticed blood on his penis.  Petitioner asked why Gale was bleeding.  Gale looked down and saw blood all over the insides of her legs.  Petitioner then went to the bathroom and shut the door.  Gale got dressed, left the apartment and drove back to work.  (TT I, 156.)  Because the blood had soaked through Gale's pants, she got an extra pair of scrubs at work. Gale put the dirty scrubs in her locker.  (TT I, 156-57.)  After Petitioner returned to work, he asked "You're not gonna tell anybody, are you?"  And, "[w]hy aren't you talking to me?  Who are you gonna tell?"  (TT I, 156-57.)

Once Gale finished her shift, she talked to her friend Lori Gottschalk about the assault.  (TT I, 157-58.)  Gottschalk tried to persuade Gale to call the police, but Gale was too scared and embarrassed to tell anyone else.  Gale did not want anyone to find out at work.  (TT I, 158-59.)

Three days after the incident, Gale went to the health department because she was worried about being pregnant.  (TT I, 159-61.)  Gale did not tell anyone at the health department about the assault because she did not want them to report it to the police.  (TT I, 162.)

At work, Gale switched shifts to avoid Petitioner.  (TT I, 163.)  To help her cope, Gale kept a journal at work.  Gale would place the journal in her scrubs and throw the pages away at home.  A couple months after the incident, Gale quit her job.  (TT I, 163-64, 166.)

At the time of the assault, Gale had just broken up with her boyfriend, Kevin Skipski. (TT I, 164-65.)  Soon thereafter, Gale and Skipski began dating again.  In May 2004, Skipski found

one of Gale's journal entries in her scrub pants but did not read it.  Heather then told Skipski about the assault, and Skipski called the police.  (TT I, 167-68.)  Skipski, who was a police officer, corroborated Gale's testimony regarding how and when he learned of the assault. (Apr. 7, 2005 Trial Transcript Vol. II (TT II), 265-69, docket #12.)

Lori Gottschalk, a nurse, worked with Heather Gale at MMC.  In July 2003, Gottschalk received a hysterical call from Heather.  (TT I, 226-28.)  Gale told Gottschalk that she had been raped by a co-worker.  Gottschalk tried to persuade Gale to go to the police, but Gale refused.  At the very least, Gottschalk told Gale to go to the health department.  (TT I, 229-30.)

Christine Warne testified as an expert in victim advocacy for sexual assault victims.  (TT II, 302.)  Warne worked with hundreds of sexual assault victims each year as a director of a women's shelter from 1983 to 1998.  (TT II, 293-94, 296.)  Warne taught classes for volunteers, trained police officers, attended conferences and received over 400 hours of direct victim service training.  (TT II, 295-97.)  In her experience, Warne found that victims often do not report crimes of sexual assault because of fear and shame.  (TT II, 304.)  Victims may also feel threatened, blame themselves or believe that loved ones will reject them.  (TT II, 305-06.)

Barbara Smith, Petitioner's mother, testified first for the defense.  Smith said that Petitioner learned of Heather Gale's allegations from the police.  (TT II, 320-21.)  Smith testified that Petitioner introduced her to Gale during the second week of August 2003 (two weeks after the alleged assault) at MMC's cafeteria. (TT II, 327-28, 330.)  Smith noticed that Gale and Petitioner were talking and laughing.  They appeared to be friends.  (TT II, 328.)  Gale even offered to babysit Petitioner's child.  (TT II, 329.)  Smith remembered the date because Petitioner and his wife were

- 4 -

separated at that time. (TT II, 328-29.) Petitioner's wife had been arrested for domestic violence on July 25, 2003, and left Michigan on August 1, 2003. (TT II, 330.)

Sarah Bissell testified that she lived across the hall from Petitioner with her fiancé and two year-old son. Bissell corroborated Barbara Smith's testimony regarding the timing of Petitioner's wife's arrest. In August 2003, Bissell testified that she saw Petitioner run up to his apartment while a woman waited in the car. Bissell identified Heather Gale as the woman in Petitioner's car. (TT II, 336-38.)

Suzanne Thompson testified that she worked as Director of Food Services, Housekeeping and Laundry Services at MMC. (TT II, 348-49.) Thompson reviewed Gale's and Petitioner's time card from July 14 through July 25, 2003. The time cards were filled out on an honor system. (TT II, 350.) On July 14, Gale's timecard said that she worked from 6:00 a.m. until 2:00 p.m. On that same day, Petitioner worked from 11:15 a.m. until 8:10 p.m. Thompson testified that Petitioner could not have taken a lunch at noon that day because he would have been serving lunch. Petitioner's and Gale's time cards did not indicate whether they had taken a lunch on July 14. (TT II, 354.) To leave MMC during a shift, the employee would have to notify Thompson in advance. Gale did not ask if she could leave work on July 14, 2003. (TT II, 355.) On cross-examination, Thompson stated that Petitioner was fired from MMC on September 2, 2003 for leaving work without permission. (TT II, 357.)

At the conclusion of trial, on April 7, 2005, the jury found Petitioner guilty of third-degree criminal sexual conduct. (TT II, 426.) On May 10, 2005, Petitioner was sentenced to a prison term of 30 months to 15 years. (May 10, 2005 Sentencing Transcript, 44, docket #1.)

On September 15, 2005, Petitioner filed a motion for a new trial in the trial court. In his motion, Petitioner argued that he was entitled to a new trial because a juror, Christine Reed-Fast, allegedly failed to disclose an unwanted or undesired sexual relationship during voir dire. Petitioner also argued that he was entitled to a new trial because Christine Warne, who offered expert testimony regarding the demeanor of a sexual assault victim, was not qualified as an expert. Finally, Petitioner claimed that he received the ineffective assistance of counsel in several instances. The trial court held evidentiary hearings on September 29, 2005 and October 10, 2005, and denied Petitioner's motion on December 16, 2005. (Dec. 16, 2005 Order & Op. regarding Def.'s Mot. for New Trial (2005 Order & Op.), Page ID#190, docket #1-8).

### B.    Direct Appeal

Petitioner, represented by new retained counsel, appealed as of right to the Michigan Court of Appeals. His brief raised the following four issues:

I.    [PETITIONER'S] CONVICTION AND SENTENCE MUST BE REVERSED BECAUSE [PETITIONER'S] CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY WAS VIOLATED WHEN A JUROR WAS UNTRUTHFUL DURING VOIR DIRE AND WHEN [PETITIONER] WOULD HAVE EXCUSED THAT JUROR IF THAT JUROR HAD SHE BEEN TRUTHFUL.

II.    [PETITIONER'S] CONVICTION AND SENTENCE MUST BE REVERSED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED AN UNQUALIFIED WITNESS TO TESTIFY AS AN EXPERT.

III.    [PETITIONER'S] CONVICTION AND SENTENCE MUST BE REVERSED BECAUSE HIS CONSTITUTIONAL RIGHT TO [THE] EFFECTIVE [ASSISTANCE OF] COUNSEL WAS VIOLATED WHEN [PETITIONER'S] TRIAL COUNSEL FAILED TO INVESTIGATE AND WHEN [PETITIONER] WAS PREJUDICED BY THAT FAILURE.

IV.   REVERSIBLE ERROR OCCURRED WHEN THE TRIAL COURT
      DENIED [PETITIONER'S] NEW TRIAL MOTION.

(Def.-Appellant's Br. on Appeal, docket #16.)   By unpublished opinion issued on November 14,

2006, a panel of the Michigan Court of Appeals rejected all appellate arguments and affirmed

Petitioner's convictions and sentences.[1]   (*See* Nov. 14, 2006 Mich. Ct. of Appeals' Op. (MCOA

Op.), docket #16.)

      Petitioner's retained counsel filed an application for leave to appeal to the Michigan

Supreme Court raising the first three claims that were brought before and rejected by the Michigan

Court of Appeals.   By order entered May 18, 2007, the Michigan Supreme Court denied his

application for leave to appeal because it was not persuaded that the questions presented should be

reviewed.[2]   (*See* May 18, 2007 Mich. Order, docket #17.)

## Standard of Review

      This action is governed by the Antiterrorism and Effective Death Penalty Act, Pub.

L. 104-132, 110 Stat. 1214 (AEDPA).   *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).   The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law.   *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).   An application for

writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot

---

[1] Judge Smolenski dissented in a lengthy opinion regarding the impartial jury issue.

[2] Justice Cavanaugh would have granted leave to appeal.   Justice Kelly dissented and stated as follows:

I believe that one question presented in this appeal should be reviewed by this Court.   It appears that
a juror withheld information that she should have revealed during voir dire.   As a consequence,
defendant may have been denied a fair and impartial jury.   I would grant leave to appeal to determine
whether defendant should have been granted a new trial.

(May 18, 2007 Mich. Order, docket #17.)

be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court; (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing

*Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.

<u>Discussion</u>

## I.     Impartial Jury

In his first ground for habeas corpus relief, Petitioner argues that he was denied his right to a fair trial by an impartial jury. Specifically, Petitioner alleges that Juror Christine Reed-Fast disclosed during jury deliberations that she had been a victim of date rape or an unwanted sexual encounter. As a result, Petitioner asserts that Juror Reed-Fast did not truthfully answer a question regarding whether she had ever been a victim of sexual assault during voir dire. (Pet., Page ID#6, docket #1.) Petitioner learned of Reed-Fast's statements after Juror Lois Riffle talked to a gas station attendant, who was a walking partner of Petitioner's trial attorney's wife. The gas station attendant then mentioned the conversation to Petitioner's attorney's wife, who, in turn, told Petitioner's attorney. After investigating the allegations, Petitioner filed a motion for a new trial, in part, because of the statements of Juror Christine Reed-Fast during jury deliberations.

Christine Reed-Fast took an oath to respond truthfully and completely to the voir dire questions. (Oct. 10, 2005 Hr'g on Mot. for New Trial, Vol. II (Hr'g T II), 9, 11, docket #14); (TT

I, 7.)  After the oath, the court began to impanel the jury.  The following are the prosecutor's

questions of Reed-Fast as a prospective juror:

| [PROSECUTOR]: | Mrs. Reed-Fast, can you tell me what your definition of [c]riminal [s]exual [c]onduct, what does that mean to you? |
|---|---|
| [] JUROR REED-FAST: | I guess it would be rape, that would be someone being forced to have sex with someone else if they didn't want to and usually with a threat of violence or something involved also. |

* * *

| [PROSECUTOR]: | If the Judge were to instruct you specifically, give you specific definition of what [c]riminal [s]exual [c]onduct means, do you feel that you could set aside any of your personal beliefs that you have come into this with and apply the law as the Judge tells you? |
|---|---|
| [] JUROR REED-FAST: | I guess I really don't know.  I'd have to hear what the specifics were to be able to tell. |
| [PROSECUTOR]: | Okay.  If the Judge told you that the law said that you don't have to say no for there to be lack of consent, would you be able to follow that law to reach a guilty verdict? |
| [] JUROR REED-FAST: | In other words even if the victim didn't say no, they could still be, he could still be charged with that? |
| [PROSECUTOR]: | Yes, he could still be found guilty beyond a reasonable doubt; if that is what the law says could you follow the law? |
| [] JUROR REED-FAST: | Yeah, I think I could. |

(TT I, 38-39.)  Later, the prosecutor asked the prospective jury panel, "have any of you ever been a

victim of sexual assault?"  (TT I, 40.)  None of the jurors responded to the question.  (TT I, 40.)

      The prosecutor specifically asked Reed-Fast one more question during voir dire:

- 10 -

[PROSECUTOR]:                  What about if the period of time was let's say ten months, would that, would you factor that in [] making a decision of whether the Defendant is guilty of the offense, Mrs. Reed-Fast?

[] JUROR REED-FAST:            I don't -- no, that really wouldn't make a difference.  But, you know, the mentality of being in a situation like that, you know, for a lot of women, that is a very difficult thing to have to --

                                        * * *

[] JUROR REED-FAST:            -- to have to go through.

(TT I, 65-66.)  Petitioner did not challenge Reed-Fast's placement on the jury panel.  (TT I, 105.) After the prosecution and defense were satisfied with the jury panel, the jurors swore to render a verdict only on the evidence introduced at the trial and in accordance with the instructions of the court.  (TT I, 105-06.)

        At the end of the trial, during jury instructions, the court instructed the jurors to "use your own common sense and general knowledge in weighing and judging the evidence."  (TT II, 415.)

        On September 29, 2005 and October 10, 2005, the trial court held hearings regarding Petitioner's motion for a new trial.  Jurors Christine Reed-Fast, Doreen Poquette and Lois Riffle and Petitioner's trial attorney, Michael Murphy, testified at the hearings regarding the impartial jury issue.  Doreen Poquette testified that Reed-Fast mentioned the following sexual encounter during deliberations.  Reed-Fast stated that in college she had been dating someone and they had sex but she did not really want to have sex.  (Sept. 29, 2005 Hr'g on Mot. for New Trial, Vol I (Hr'g T I), 6, 9, docket #14.)  Reed-Fast did not say "no."  (Hr'g T I, 9.)  Reed-Fast provided that her encounter was undesired and could be considered date rape today.  Poquette testified that Reed-Fast's vote was

                                        - 11 -

"not guilty" before she told her story.  (Hr'g T I, 31.)  Reed-Fast was the last person to vote "guilty."

(Hr'g T I, 31.)  Poquette thought that Reed-Fast's story was more of Reed-Fast trying to figure things

out for herself as the majority of the jurors had already decided their vote.  (Hr'g T I, 33.)

       Another juror, Lois Riffle, testified that she recalled Christine Reed-Fast say during

jury deliberations that she had experienced an unwanted sexual act.  (Hr'g T II, 35.)

       Petitioner's trial attorney, Michael Murphy, testified that if a juror indicated that she

had experienced an unwanted sexual assault during jury voir dire, he would have challenged the juror

for cause.  If the trial court would have denied that request, Murphy would have used a preemptory

challenge.  (Hr'g T II, 82.)

       Juror Christine Reed-Fast testified that she did not respond to the question regarding

whether she had been a victim of sexual assault because "[she] had not been a victim of sexual

assault."  (Hr'g T, 14.)  In contrast, Reed-Fast testified that she explained to the other jurors that she

had been in a situation similar to date rape.  (Hr'g T II, 16.)  Christine elaborated:

| A. | I said I had been in situations like date rape in that a woman, when a woman goes to a place with a man, and by virtue of her going there he expects that they're going to have sex. That's my, that was the situation I was referring to. |
|---|---|

* * *

| [DEFENSE]. | Now, but you actually did have that type of experience where you had a sexual experience that was, that you did not want to have? |
|---|---|
| A. | I wouldn't say that I –I didn't say that I didn't want to have it. I, I, I could say that I should not have been having it because I was 18 years old and I wasn't using birth control.  I should not have.  But I did not say that I did not want to have it. |

- 12 -

[DEFENSE].          Did you indicate during the course of the deliberation in the jury room that you had unwanted sex, sexual activity when you were younger?

A.          I didn't use the word "unwanted[.]"  I didn't say that it was unwanted.

* * *

[DEFENSE].          [W]hat would you use the term to describe that?  Like I used unwanted and you said that is not the right term.  What, what is the term?

A.          Probably unwise.

[DEFENSE].          Now, did you indicate that in the jury room that you had been a victim under those circumstances?

A.          I have been in the situation where I went somewhere with someone and they were going to expect sex because of that.

[DEFENSE].          Did you use the term that it would be considered to be date rape today what happened to you?

A.          Well, that's the situation that that type of, that date rape takes place in.

[DEFENSE].          So [] when that happens in your mind that [] is a form of date rape?

A.          No, because, because I didn't, I wasn't objecting to it.  I wasn't not going along with it.  It wasn't that I didn't want to do it.  I mean for me personally it was just that it was not something I should have been doing.

[DEFENSE].          Did you indicate that you were a victim under those circumstances in the jury room?

A.          I never used the word "victim".

[DEFENSE].          Did you use the term "sexual assault"?

- 13 -

A.                  No, I did not.

[DEFENSE].          Now, is it your testimony that what you described in the jury room would be something that is a form of imprudence perhaps but not a form of unwanted sexual contact; is that what your testimony is?

A.                  In my own personal situation, yes.

                        * * *

[DEFENSE].          And it is your testimony that during the deliberation you said nothing about your prior sexual experiences?

A.                  I referred to situations or in general of some sexual nature that I had been in but not anything specific.  And I equated it to date rape because it was the situation, going into the situation it was similar.  And I saw, did see a certain parallel with this case.  And that's why I had mentioned it.

(Hr'g T II, 16-21.)

Following the hearings on Petitioner's motion for a new trial, the trial court held that

Christine Reed-Fast did not state during deliberations that she was a victim of rape or date rape.

(2005 Order & Op., Page ID#190, docket #1-8.)  The trial court denied Petitioner's motion for a new

trial on this issue.  The Michigan Court of Appeals upheld the trial court's decision, stating:

On appeal, defendant first asserts that the trial court abused its discretion by denying his motion for a new trial on the basis that he was denied an impartial jury. This Court reviews de novo alleged errors involving the seating of jurors.  *People v Manser*, 250 Mich App 21, 24; 645 NW2d 65 (2002).  This Court reviews a trial court's decision to deny a motion for a new trial for an abuse of discretion.  *People v Daoust*, 228 Mich App 1, 16; 577 NW2d 179 (1998).

A criminal defendant has the right to have his case tried before an impartial jury.  Const 1963, art 1, § 20.  Generally, "when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause."  *Daoust, supra* at 9.

- 14 -

In this case, some time after the trial concluded, it came to light that during deliberations one of the jurors had apparently compared her own sexual experiences to date rape, and indicated that because of these experiences she was willing to accept the complainant's testimony even though she had delayed reporting the alleged rape. However, at the hearing on defendant's motion for a new trial, the challenged juror denied ever having been sexually assaulted and indicated that her comments during the jury's deliberations concerned "unwise" but not forcible sexual acts that she had engaged in when she was younger.

Jurors are permitted to "view the evidence presented in the light of their general knowledge of the field embraced within the scope of the inquiry." *People v Schmidt*, 196 Mich App 104, 108; 492 NW2d 509 (1992). This is what the juror in question was doing. She was evaluating the evidence in light of her own life experiences relative to uncomfortable sexual situations, although not rising to the level of criminal sexual conduct, and thereon, decided to accept the evidence that the complainant's delayed reporting did not necessarily require the conclusion that the complainant was lying about what occurred.[1] We conclude that that challenged juror was not excusable for cause. As the trial court noted, the "unwise" sexual experience of the challenged juror was very different from what allegedly took place in this case. Specifically, the challenged juror testified that she was not forced to do anything against her will. Moreover, there is no evidence that the challenged juror was biased against defendant, had predetermined the outcome of the case, was interested in a question like the issue to be tried, or was otherwise susceptible to a challenge for cause under the court rules. MCR 6.412(D)(1); MCR 2.511(D). This case is distinguishable from *Manser, supra*, in which this Court indicated that a juror would be properly excusable for cause from sitting on a jury trying a case involving criminal sexual conduct if the juror had previously been victimized by sexual misconduct because the psychological effect of being victimized would be to render the former victim interested in the question being tried. *Id.* at 28 n 5. In this case, there is simply no evidence that the challenged juror was previously victimized by sexual misconduct.

Finally, we conclude that the challenged juror was not "less than forthcoming with information that should have been revealed in response to questions posed during the voir dire." *Manser, supra* at 29. At most, the juror's history was tangentially related to the issues being tried. She was not a victim of a sexual assault. Her own history simply involved what she viewed as unwise sexual acts. There is no evidence that she lied during voir dire or failed to reveal information that was relevant to the specific questions posed or to the proceedings in general.[2] Thus, the juror cannot be said to have failed to reveal a matter that deprived her of the ability to act impartially, and defendant cannot claim that he was denied a fair trial on this basis. *People v Larry Smith (After Remand)*, 122 Mich App 202, 207; 332 NW2d 401 (1981). Accordingly, we conclude that defendant has failed to show that he was

denied an impartial jury, and the trial court did not abuse its discretion in denying his motion for a new trial on this basis.

_____

[1]We note that this juror already informed defense counsel during voir dire that the delayed reporting of the criminal sexual conduct would not make a difference to her because reporting such events would be difficult. We also disagree with defendant's comparison of the juror's sexual experiences to the events that occurred here, where there was evidence of a physically forceful, nonconsensual act against the victim.

[2]The *Daoust* panel recognized that pre-1990 cases had provided for reversal when there was information potentially affecting a juror's ability to act impartially and the defendant would have dismissed the juror by exercising a peremptory challenge had the information been timely revealed. *Daoust, supra* at 7-8. *Daoust* rejected the case law, finding that it would be too difficult for a court to determine in hindsight whether a defendant would have exercised a peremptory challenge. *Id.* at 9. However, the panel specifically limited its ruling by noting that "our holding does not address situations in which it is discovered that one of the jurors has lied during voir dire. Here, there was no indication that the juror in question purposefully provided any false answers during voir dire." *Id.* at 9 n 3. The *Manser* panel, distinguishing *Daoust*, found that it was presented with facts in which a juror failed to disclose information that she absolutely should have come forward with and that it would not be too difficult to determine in hindsight whether the defendant would have exercised a peremptory challenge considering the circumstances; therefore, consideration of a potential peremptory challenge was appropriate. *Manser, supra* at 29. Here, the evidence did not establish that the juror lied, nor that she was less than forthcoming during voir dire, and it would be too difficult in hindsight to determine whether defendant would have exercised a peremptory challenge. Again, we note that the juror informed counsel during voir dire that delayed reporting would not make a difference to her because it would be understandable, yet no peremptory challenge was exercised. Our review is properly limited to actual prejudice and challenges for cause as provided in *Daoust*. Additionally, we cannot help but note that testimony at the evidentiary hearing following trial revealed that the challenged juror was the last juror to decide that defendant was guilty.

(MCOA Op. at 1-3.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ." U.S. CONST. AMEND. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). The voir dire is designed "to protect [this] right by exposing possible biases, both known and unknown,

on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Thus, "[t]he necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *Id.*

In order for a petitioner to be entitled to habeas relief based on a juror's non-disclosure during voir dire, the petitioner "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556. The *McDonough* test governs cases where it is alleged that a juror intentionally concealed information. *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (citation omitted). As the *McDonough* Court explained, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough,* 464 U.S. at 556.

The question of bias of an individual juror at a state criminal trial is a question of historical fact. *Dennis,* 354 F.3d at 520 (citing *Patton v. Yount,* 467 U.S. 1025, 1036 (1984)); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)). The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). A state court decision based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state court

proceeding and not simply erroneous or incorrect. *Keith v. Mitchell,* 455 F.3d 662, 669 (6th Cir. 2006) (citing *Williams,* 529 U.S. at 409-11); *see also Young v. Hofbauer,* 52 F. App'x 234, 237 (6th Cir. 2002).

After reviewing Petitioner's motion for a new trial and hearing testimony from Jurors Christine Reed-Fast, Doreen Poquette and Lois Riffle, and Petitioner's trial attorney, Michael Murphy, the trial court held that Juror Reed-Fast was completely candid during voir dire.  (2005 Order & Op., Page ID#190, docket #1-8.)  The trial court made the following findings.  The trial court found that Christine's description of her college experience did not establish her as a victim of an assault.  The college experience was more of an unwise encounter because Reed-Fast failed to use birth control.  (2005 Order & Op., Page ID#190.)  The court also determined that Reed-Fast's use of the word "unwise" was not inconsistent with Juror Poquette's recollection that Reed-Fast said the encounter was "undesired."  (*Id.*)  In either event, the court found that Reed-Fast's experience was not a matter of force but instead "discretion or wisdom."  (*Id.*)  Moreover, the trial court found of great significance the fact that Christine Reed-Fast was the last person to vote guilty so her comments were not made when the other jurors were leaning toward innocence.  The other jurors had already voted guilty.  (*Id.*)

The state court's finding that Reed-Fast honestly answered questions during voir dire are presumed to be correct.  Petitioner has failed to offer any evidence that would overcome the state court's factual findings by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

Under *McDonough*, a petitioner must first demonstrate that a juror failed to answer honestly a material question during voir dire and further show that a correct response would have provided a valid basis for a challenge for cause.  464 U.S. at 556.  Because the trial court held that

Juror Christine Reed-Fast honestly answered voir dire questions denying any history of a sexual assault, Petitioner fails to satisfy the first part of the *McDonough* test.

Even if the state court had decided the first part of the *McDonough* test differently, Petitioner still failed to satisfy the second part of the test.  Under *McDonough*, a petitioner must also show that "a correct response would have provided a valid basis for a challenge for cause."  *See McDonough,* 464 U.S. at 556.  The Michigan Court of Appeals held that Petitioner's trial counsel would not have had a valid basis to challenge Christine Reed-Fast for cause because Reed-Fast's "unwise" sexual experience was very different from the forced sexual penetration and there was no evidence that Reed-Fast could have been challenged under the Michigan Court Rules.  (MCOA Op. at 2.)  The decision of the Michigan Court of Appeals was neither contrary to, nor involved an unreasonable application of *McDonough* on either prong of the test.

## II.      Expert Testimony

In his second ground for habeas corpus relief, Petitioner argues that the trial court abused its discretion when it allowed Christine Warne to testify as an expert on typical victim responses to sexual assault.  Petitioner also argues that he received ineffective assistance of counsel because counsel did not object to the testimony of the expert witness.  The Michigan Court of Appeals held that Petitioner failed to challenge Christine Warne's testimony as expert, and, thus, waived review of the issue.  (MCOA Op. at 3.)

Respondent contends that the issue is procedurally defaulted.  (Respondent's Answer, Page ID#249-50, docket #6.)  The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525

(1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). In this case, the allegedly defaulted claim is insubstantial, so denial on the merits is warranted.

In his motion for a new trial, Petitioner argued that Christine Warne should not have been allowed to testify as an expert on typical victim responses to sexual assault. Petitioner claims that Warne was essentially functioning as a social worker, but that she was not licensed as a social worker. Petitioner states that the trial court should have evaluated Warne's qualifications under Michigan Rules of Evidence 702. The trial court denied Petitioner's motion on the issue and held the following:

> Prosecution Witness Christine Warne testified that she started at the Region IV Community Services Women's Shelter in 1982. Within a year she had become Program Director and eventually became Executive Director until 1998. Prior to coming to Ludington she had worked at a rape crisis center in Pennsylvania. She stated that when she first became involved with victims of sexual assault, rape, and domestic violence back in the 1970's that most programs were then community based self-started by people in the respective communities. Thus, her training started as on-the-job training but eventually included ongoing victim services training wherein she "probably has had over 400 hours of direct victim service training[.]" She stated that she worked with approximately one hundred victims of sexual assault in a average year for a period of some twenty years. She stated [that] she has conducted classes

for volunteers in Pennsylvania and Michigan as well as for police training.  Further, she attended at least one major conference a year regarding the subject of providing services to sexual assault victims.

The Court remains satisfied, as it was at trial, that Ms. Warne through periodic training and extensive experience achieved an expertise level which qualified her to share with the jury that victims of sexual assault frequently are too embarrassed to report that an assault has occurred in part because they are afraid that they will not be believed thus reporting often is delayed.  She testified that being a rape victim creates a feeling of being very insecure.  Further, when they do tell someone, it usually is not a person in authority unless there had been a significant level of violence wherein they had ended up in the emergency room or hospital.  She testified that the person feels violated and simply hopes that their life can return as quickly as possible to normal.  The Prosecutor was careful to not ask Ms. Warne her opinion about the veracity of Heather Gale.

(2005 Order & Op., Page ID##195, 196.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

- 21 -

The admission of Christine Warne's testimony as an expert did not deprive Petitioner of a fundamentally fair trial. Under Michigan Rule of Evidence 702, "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify" regarding "scientific, technical, or other specialized knowledge" if it will assist the fact-finder in understanding the evidence or determining a fact in issue. The trial court correctly held that admission of her testimony under the Rules of Evidence was proper in light of her training and experience. In federal criminal trials, admission of expert testimony is within the trial court's discretion and is reviewed only for abuse of discretion. *See, e.g., United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999). In a habeas corpus proceeding, the standard is significantly more substantial for a petitioner. The allegedly erroneous evidentiary ruling must not only be incorrect, but so prejudicial that it affects the fundamental fairness of the trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). In the present case, Petitioner cannot show even a violation of state evidence rules, let alone the existence of an error so egregious that it deprived him of due process of law. Petitioner's claim arising from the admission of expert testimony should therefore be rejected on its merits.[3]

Petitioner raises a related claim of ineffective assistance of counsel. Petitioner claims that his trial counsel was ineffective for failing to object to testimony of Christine Warne as an expert.

---

[3] The state-law nature of this claim is apparent from a review of the state appellate record. Petitioner's counsel presented this claim to the Michigan Supreme Court as a pure issue of state evidence law, without citation to any federal due-process principle or authority. (*See* Application for Leave to Appeal at 38-40, found in Supreme Court record, docket # 17).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 129 S. Ct.

1411, 1421 (2009)).  In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Petitioner argues that counsel should have objected to Christine Warne's expert testimony on the grounds that she was not qualified to testify as an expert.  Petitioner, however, cannot establish prejudice resulting from counsel's conduct.  When deciding claims of ineffective assistance of counsel, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.  For the prejudice prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  The prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  Therefore, the prejudice inquiry must not focus solely on mere outcome determination; attention must be given to "whether the result of the proceeding was fundamentally unfair or unreliable."  *Id.* at 369.  Because Christine Warne's expert testimony did not result in a fundamentally unfair outcome, Petitioner was not prejudiced by counsel's failure to make an objection.  Moreover, objecting to Christine Warne's expert testimony would have been frivolous.  Christine Warne had specialized knowledge from her experience as an advocate for sexual assault victims to testify as an expert on victims responses to sexual assault.  Counsel's failure to make a

frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).  Accordingly, Petitioner's claim of ineffective assistance of counsel is without merit.

### III.    Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of counsel when trial counsel (1) failed to call Kimberly Dobias, Joseph Underwood and Deborah Millard as defense witnesses, (2) failed to introduce a videotape of Petitioner's initial conversation with the police, (3) admitted that Petitioner had sexual intercourse with the victim in his opening argument, and (4) refused to allow Petitioner to testify.

As previously stated, to establish a claim of ineffective assistance of counsel, the petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland*, 466 U.S. at 687-88.

### A.    Failure to Call Witnesses

Petitioner's trial attorney, Michael Murphy, testified that Kimberly Dobias and Joseph Underwood were prospective witnesses for the defense.  Murphy interviewed both Kimberly Dobias and Joseph Underwood prior to Petitioner's trial.  (Hr'g T II, 94.)  Murphy, however, had never heard of Debra Millard before Petitioner's trial.  (Hr'g T II, 95.)

### 1.    Kimberly Dobias

At the hearing on the motion for a new trial, attorney Michael Murphy testified that he was going to call Kimberly Dobias, an employee of the Mason County District Health Agency

- 25 -

in July 2003, as a witness but she did not appear at court during the trial.  (Hr'g T II, 97-98, 100.)

Murphy wanted Dobias to testify as to when Heather Gale indicated that the unwanted sex occurred.

(Hr'g T II, 97-98.)   Dobias stated that she was going to testify regarding the paperwork generated

by the health department from Heather Gale's visit.  (Hr'g T II, 101, 112.)

> After articulating the appropriate constitutional standard, the Michigan Court of

Appeals rejected Petitioner's ineffective assistance of counsel claim, as follows:

> Defendant argues that his trial counsel was ineffective because he failed to call several additional witnesses to testify.  First, defendant argues that his trial counsel should have called registered nurse Kimberly Dobias to testify on his behalf. At the motion for a new trial, Dobias testified that she worked at the local county health department office.  Dobias testified that although she could not recall meeting the complainant, her paperwork indicated that the complainant had come into her office a few days after she was allegedly raped.  Dobias was originally scheduled to testify by defendant's trial counsel in order to help pinpoint when the incident occurred.  However, defense counsel testified that her testimony on this point was not needed because the information came out in another manner.

> Defendant must overcome the presumption that the challenged action was sound trial strategy.  *People v Knapp*, 244 Mich App 361, 385-386; 624 NW2d 227 (2001).  Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy.  *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).  Defendant argues that Dobias should have been called to rebut Warne's testimony concerning the likelihood that the complainant would not have immediately reported the sexual assault.  However, defendant has not asserted on appeal that Dobias was qualified to testify as an expert witness concerning behavioral patterns of sexual assault victims.  Nor is it clear that her opinion testimony on that issue would have been admissible if she testified as a lay witness because her opinion did not rely on her perception as required by MRE 701.  Rather, Dobias simply testified that she believed victims would be comfortable around her, so they should have felt free to open up to her.  From this evidence, we conclude that Dobias' opinion testimony was not clearly admissible, and, accordingly, defendant has failed to show that his trial counsel's failure to have Dobias testify indicates that his performance fell below an objective standard of reasonableness.  *Rodgers, supra* at 714.

(MCOA Op. at 3-4.)

The appellate court found that Petitioner did not satisfy the first prong of *Strickland* because Kimberly Dobias's opinion testimony was not admissible under the Michigan Rules of Evidence. To the extent Petitioner raises a claim under Michigan Rules of Evidence 701 and 702, his claim is not cognizable on habeas review. Even if counsel were ineffective for failing to call Kimberly Dobias at trial, Petitioner has not demonstrated that the alleged failure prejudiced his defense. Decisions as to whether to call certain witnesses or what evidence to present are presumed to be a matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture,* 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002). A defense is substantial if it might have made a difference in the outcome of the trial. *Matthews v. Abramajtys,* 319 F.3d 780, 790 (6th Cir. 2003) (citing *Strickland,* 466 U.S. at 693-96).

Counsel's failure to present the testimony of Kimberly Dobias could not possibly have deprived Petitioner of a substantial defense. As the state Court of Appeals correctly noted, Dobias did not even remember meeting the complainant and was merely relying on records to surmise that she talked with her. Dobias's statement that the victim should have felt free to disclose a rape during the meeting is the sheerest of speculation, given that Dobias did not recall the circumstances of the encounter. The state appellate court correctly held that such testimony is inadmissible. Even had it been admitted, it would have been weak support for the defense.

Attorney Michael Murphy intended to have Kimberly Dobias testify as to a different issue -- the timing of the sexual assault. However, Murphy was able to obtain that testimony from another witness, Lori Gottschalk. Gottschalk testified that Heather Gale called her in July 2003 to

talk about the assault.  (TT I, 226-28.)  Because of Gottschalk's testimony, Murphy stated that

Dobias's testimony would have been cumulative.  (Hr'g T II, 98.)  The failure to present evidence

that is merely cumulative of evidence already presented does not establish prejudice.  *See Clark v.*

*Mitchell*, 425 F.3d 270, 286 (6th Cir. 2005) (holding that counsel's failure to introduce mitigating

evidence that would have been cumulative did not prejudice the defendant); *Hollaman v. Stickrath*,

No. 88-3991, 1989 WL 56584, at *1 (6th Cir. May 31, 1989) (defendant suffered no prejudice from

counsel's failure to locate alleged vital witnesses as the omitted testimony would merely have been

cumulative of that presented by other defense witnesses).  Accordingly, Petitioner's ineffective

assistance of counsel claim regarding Dobias is insubstantial.

## 2.   Joseph Underwood

Petitioner claims that his trial counsel was ineffective for failing to call Joseph

Underwood as a defense witness.  Petitioner's attorney listed Underwood as a witness on the defense

witness list but did not call him.  (Hr'g T II, 94-95.)  The Michigan Court of Appeals provided the

following summary of Underwood's testimony from the hearing on Petitioner's motion for a new

trial:

> [A]t the hearing on defendant's motion for a new trial, Underwood testified that he
> lived in an apartment across the hall from defendant with Sarah Bissell who had
> testified on defendant's behalf.  At the hearing on defendant's motion for a new trial,
> Underwood testified that he had seen the complainant going into defendant's
> apartment several weeks before the incident at issue here.  He testified that he had
> seen them holding hands as they went up the stairs to the apartment.  Defendant's
> trial counsel indicated that he had interviewed Underwood, but did not indicate why
> he failed to call him as a witness.

(MCOA Op. at 4.)

The Michigan Court of Appeals then rejected Petitioner's ineffective assistance of counsel claim:

> Again, however, we note that decisions regarding whether to call or question a witness are presumed to be matters of trial strategy. *Rockey, supra* at 76. Here, defense counsel may have believed that because of Underwood's friendship with defendant that his testimony that the complainant had visited defendant's apartment on a previous occasion while defendant's wife was still living there would not have been credible. Accordingly, defendant's trial counsel may have decided to rely on Bissell's testimony to serve the purpose of establishing the possibility of a romantic relationship between defendant and the complainant. Moreover, because Bissell's testimony concerned a possible relationship between defendant and the complainant after defendant's wife moved out, defense counsel may have believed that her testimony fit in better with the story he was constructing for the jury, i.e., defendant could not have been with the complainant in July when she claimed because his wife likely would have been there and his work schedule would not have allowed it, but they did have a consensual sexual relationship after his wife moved out, which the complainant was trying to hide from her boyfriend by claiming defendant raped her. Considering the foregoing, we conclude that defendant has failed to overcome the presumption that his trial attorney's decision not to call Underwood as a witness was sound trial strategy when the decision was made. *Knapp, supra* at 385-386.

(MCOA Op. at 4.)

The Michigan Court of Appeals found that Petitioner's trial counsel satisfied the performance prong of *Strickland*. With regard to the performance prong of the inquiry, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. Judicial scrutiny of performance is highly deferential, and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Therefore, this Court should judge whether, in light of all the circumstances viewed at the time of counsel's conduct,

counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

The appellate court found that it was a strategic decision of trial counsel not to have Joseph Underwood testify because Underwood's testimony would have undermined the defense theory of the case.  The defense suggested that Petitioner and Heather Gale were involved in a consensual relationship *after* Petitioner's wife left in August 2003.  Underwood testified that he saw Petitioner and Heather Gale going into Petitioner's apartment several weeks *before* Gale was allegedly assaulted at Petitioner's apartment, in late June or early July of 2003.  (Hr'g T, 131.) Underwood's testimony would have established a relationship between Petitioner and Gale *prior to* the assault and while Petitioner was still living with his wife, a stay-at-home mother.  (TT II, 336-38.)  Counsel presented evidence and argument to show that Petitioner and Gale had a consensual relationship *after* Petitioner's wife moved out of their apartment.  A relationship prior to that time would have shown Petitioner as unfaithful to his wife.  Thus, it was reasonable to omit Underwood's testimony, as it both made Petitioner look bad and cut against the theory of a consensual relationship started after the alleged assault.

Petitioner cannot demonstrate the requisite prejudice required by the second prong of *Strickland*.  The failure to call Joseph Underwood as a witness did not deprive Petitioner of a substantial defense.  In fact, it contradicted the defense.  Accordingly, the Michigan Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of *Strickland*.

### 3.    Deborah Millard

Petitioner argues that he received the ineffective assistance of counsel when his trial counsel failed to locate Deborah Millard for trial.  At the hearing on the motion for a new trial, Millard testified that she worked at Oakview Medical Care Facility with Petitioner's mother in 2003. (Hr'g T II, 122.)  Millard had seen Heather Gale holding hands with Petitioner at the "butt hut" in June 2003.  (Hr'g T II, 114-15.)  The butt hut was where employees would go on smoke breaks. (Hr'g T II, 115.)  In July, Millard also saw Petitioner and Gale walking out of Wal-Mart holding hands.  Millard did not tell anyone about her observations until after the trial.  (Hr'g T II, 116.)

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Defendant also asserts that his counsel was ineffective because he failed to investigate the case and locate Deborah Millard who also could have testified to a romantic relationship between defendant and the complainant.  At the hearing on defendant's new trial motion, Millard testified that she had seen defendant and the complainant together on two separate occasions.  Defendant's trial counsel indicated that he was not aware of Millard prior to trial, and that defendant told him that no one else knew about his relationship with the complainant.

> "Failure to make a reasonable investigation can constitute ineffective assistance of counsel."  *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005).  However, in this case, defendant has not shown that the investigation undertaken by his trial counsel was unreasonable.  Defense counsel inquired of defendant whether anyone else knew of a romantic relationship between the complainant and he, and defendant indicated that he was not aware of anyone else who had knowledge of that information.  Millard did not work at the same location as defendant and Gale.  Rather, she worked at a different medical facility where defendant apparently also worked.  We do not believe that defendant's trial counsel was required to interview every person defendant had ever worked with on the off-chance someone might have seen defendant and the complainant together, when defendant himself indicated that he was unaware that someone else knew of his relationship with her.  Moreover, because defendant's trial counsel had already located a witness who he used at trial to establish a romantic relationship between defendant and the complainant, we conclude that there is no reasonable probability that if Millard had been called as a witness that the result of the proceedings would

have been different.  Accordingly, defendant's claim of ineffective assistance of counsel on this basis must fail.  *Rodgers, supra* at 714.

(MCOA Op. at 4-5.)

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690).  This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

The findings of the Court of Appeals on this issue are well-supported in the record. Prior to Petitioner's trial, attorney Michael Murphy specifically asked Petitioner if any other witnesses knew of a romantic relationship between Petitioner and Heather Gale.  (Hr'g T II, 95.) Petitioner responded, "no."  (Hr'g T II, 95.)  Murphy even interviewed Petitioner's boss, Suzanne Thompson, but she did not know of any relationship between Petitioner and Gale either.  (Hr'g T II, 95.)  Counsel cannot be expected to investigate a defense or a witness unknown to him.  *See Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004); *see also Sones v. Bell,* No. 1:07-cv-552, 2010 WL 2472760, at *12 (W.D. Mich. Apr. 26, 2010).  Moreover, Petitioner had already found a witness, Sarah Bissell, to testify as to a romantic relationship between Petitioner and Gale after Petitioner's wife's arrest.  (TT II, 336-38.)  Petitioner's allegations therefore do not undermine the strong presumption that counsel's performance was reasonable.  *See Strickland*, 466 U.S. at 689.

Accordingly, the Michigan Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of *Strickland*.

### B.      Videotape & Opening Statements

Petitioner argues that his trial counsel was ineffective for failing to introduce a videotaped interview of Petitioner by the police. Petitioner also argues that his counsel should not have admitted that Petitioner had consensual sexual intercourse with Heather Gale in his opening statements.

Because attorney Michael Murphy thought that the prosecution would introduce a videotaped statement of Petitioner, he made the following statements in his opening remarks:

> Now, it's true that my client was involved with a brief relationship with Miss Gale. And further that the parties engaged in sexual intercourse.

> My client, and you'll hear testimony from my client, that that was consen[s]ual sexual intercourse. And my client admitted that last June. And that is not an issue.

(TT I, 369-40.) At the hearing on the motion for a new trial, Murphy testified that Petitioner made numerous admissions on the videotape. (Hr'g T II, 95.) Petitioner "first denied the existence of a relationship or even acknowledged or even knowing the complainant, and then turned around and said he did know her but didn't have sex, and then finally admitted to having sex but it was consensual." (Hr'g T II, 96.) Murphy noticed that both the videotape and the officers who elicited Petitioner's statements were in the courtroom at the beginning of Petitioner's trial. Nevertheless, the prosecutor did not admit the videotape into evidence nor call the officers to testify as witnesses.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claims:

Defendant also asserts that his trial counsel was ineffective because he failed to introduce a videotape of defendant's initial conversation with the police and admitted that defendant had sexual intercourse with the complainant. Defense counsel testified that he factored his belief that the prosecution would use the videotape into his trial strategy, and that he considered the tape to be very prejudicial because on the tape defendant at first denied knowing the complainant, then admitted knowing her but denied they had a relationship, and then admitted to having sex with the complainant but claimed the sex was consensual. Thus, according to defense counsel, he made statements in his opening remarks to try to counter what was in the tape including the admission of consensual sex.

"A court cannot conclude that effective assistance of counsel is denied merely because a certain trial strategy backfired." *People v Barnett*, 163 Mich App 331, 338; 414 NW2d 378 (1987). Decisions regarding what evidence to present are presumed to be matters of trial strategy that this Court "will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Further, conceding certain points at trial does not necessarily constitute ineffective assistance of counsel. Rather, "it is only a complete concession of defendant's guilt which constitutes ineffective assistance of counsel." *People v Krysztopaniec*, 170 Mich App 588, 596; 429 NW2d 828 (1988).

In this case, defendant has not shown that his trial counsel's decision to not introduce the videotape was unsound trial strategy. According to defendant's counsel, the tape cast defendant in a poor light and made him appear evasive and untruthful. While in reliance on his belief that the prosecution would introduce the videotape, defendant's trial counsel may have made statements to the jury during his opening remarks that were not fully supported by the evidence presented at trial. But defendant has not shown that leaving those statements unsupported was a worse strategy than introducing the videotape would have been. Defense counsel's strategy cannot be second-guessed simply because it failed. Because defendant has not shown that there is a reasonable probability that if the videotape had been introduced the result of the proceedings would have been different, his argument that he was denied effective assistance of counsel on this basis fails. *Rodgers, supra* at 714.

(MCOA Op. at 5-6.)

The Michigan Court of Appeals' found that counsel's decision to forego the introduction of Petitioners' videotape into evidence was not unsound trial strategy. In determining what is reasonable, the reviewing court's scrutiny of counsel's performance must be highly deferential: that is, it "must indulge a strong presumption that counsel's conduct falls within a wide

range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.  Because Petitioner provided contradictory statements in the videotape regarding his relationship with Heather Gale, it was entirely reasonable for counsel to decide against admitting the videotape into evidence. (Hr'g T II, 95-96.) Petitioner first denied a relationship with Gale or even knowing her, and then Petitioner said he did know Gale but he did not have sex with her, and finally Petitioner admitted to having sex but it was consensual.   (Hr'g T II, 96.) The videotape damaged Petitioner's credibility and the decision not to offer it into evidence was reasonable.

Further, it was entirely reasonable for counsel to concede that the Petitioner had consensual sex with the complainant in his opening remarks.  Petitioner had admitted this to police. Petitioner's trial counsel had no reason to know that the videotape was not going to be introduced into evidence or that the officers who interviewed Petitioner would not be called as witnesses by the prosecution.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.  Because the videotape and officers were present on the first day of trial, it was entirely reasonable for counsel to believe that the videotape would be admitted into evidence and the officers would be called as witnesses.  In light of all the circumstances at the time of counsel's conduct, trial counsel's actions were within the "wide range of professionally competent assistance."  *Id.* at 690.

In summary, the Michigan Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of *Strickland*.

### C.    Failure to Call Petitioner to Testify

In his last claim of ineffective assistance of counsel, Petitioner argues that his trial

counsel refused to allow him to testify at trial.  The Michigan Court of Appeals rejected his claim,

finding:

> Finally, defendant asserts that his counsel was ineffective because he refused to allow
> defendant to testify.  Criminal defendants have a constitutional right to testify.
> *People v Simmons*, 140 Mich App 681, 683-684; 364 NW2d 783 (1985). However,
> defendant has failed to present any evidence that his counsel deprived him of that
> right.  At the hearing on defendant's motion for a new trial, defendant's trial counsel
> testified that as the trial continued he felt "that the jury was looking unfavorably upon
> my client.  And I chose not to put him on the stand at that point."  Defense counsel's
> testimony on the subject does not indicate that defendant disagreed with or objected
> to this decision.  Defendant himself did not testify during the hearing on his motion
> for a new trial.  There is no indication in the record that defendant objected to his
> counsel's decision that it would be better for defendant not to testify.  Defendant's
> apparent acquiescence to his defense counsel's decision to not have him testify
> constitutes a waiver of his right to testify.  *Id.* at 685.  Accordingly, defendant has
> also failed to establish ineffective assistance of counsel on this basis.

(MCOA Op. at 6.)

A criminal defendant has a constitutional right to testify on his own behalf.  *Rock v.*

*Arkansas*, 483 U.S. 44, 49 (1987). Defense counsel's role is to advise the defendant whether to

testify, but the ultimate decision is for the defendant to make. *United States v. Hover*, 293 F.3d 930,

933 (6th Cir. 2002).  When a tactical decision is made by an attorney that a defendant should not

testify, the defendant's assent is presumed.  *United States v. Webber*, 208 F.3d 545, 551 (6th Cir.

2000).  A trial court has no duty to inquire sua sponte whether a defendant knowingly, voluntarily,

or intelligently waives his or her right to testify. *Id.* at 551-52.  Waiver of the right to testify may be

inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or

notify the trial court of the desire to do so.  *See id.* at 551.  Here, Petitioner's trial attorney testified

that he believed that the jury was looking unfavorably on his client and he chose not to put him on

the stand.  (Hr'g T II, 96-97.)  Murphy also noted that if Petitioner did testify, his damaging

videotaped confession could be admitted on cross-examination.  (Hr'g T II, 97.)  Moreover,

Petitioner never alerted the trial court at the time of trial that he wanted to testify.  Because there is

nothing in the record to indicate that Petitioner disagreed with counsel's advice not to testify,

Petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to

testify or that his counsel rendered the effective assistance of counsel.  *See Gonzales v. Elo*, 233 F.3d

348, 357 (6th Cir. 2000).

Accordingly, the decision of the Michigan Court of Appeals was neither contrary to,

nor involved an unreasonable application of *Strickland*.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:   August 22, 2011                         /s/  Joseph G. Scoville
                                                 United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of
service of this notice on you.  28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b).  All objections and
responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections
may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th
Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).